FILED
2013 SEP 24  AM 11: 27
GUILFORD COUNTY, C.S.C.
BY

NORTH CAROLINA

GUILFORD COUNTY

DENNIS J. REITTINGER, KAREN M.
REITTINGER, and MID-TOWN BODY
REPAIR, INC., on behalf of themselves and all
others similarly situated,

                Plaintiffs,

v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY (F/K/A
JEFFERSON-PILOT LIFE INSURANCE
COMPANY AND F/K/A / A/K/A
JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY), SECURITAS
FINANCIAL LIFE INSURANCE COMPANY
F/K/A JEFFERSON STANDARD LIFE
INSURANCE COMPANY A/K/A
"JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY,"

                Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CvS 8786

**CLASS ACTION COMPLAINT
(DEMAND FOR JURY TRIAL)**

NOW COME Plaintiffs Dennis J. Reittinger, Karen M. Reittinger, and Mid-Town Body

Repair, Inc. (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated,

for their Class Action Complaint against Defendants The Lincoln National Life Insurance

Company (formerly known as Jefferson-Pilot Life Insurance Company, and formerly known as

or also known as Jefferson-Pilot Financial Insurance Company), Securitas Financial Life

Insurance Company (formerly known as Jefferson Standard Life Insurance Company, and

formerly known as or also known as Jefferson-Pilot Financial Insurance Company), allege and

say as follows:

## OVERVIEW

1.     This case stems from efforts by Defendants and others that misled employers and employees such as Plaintiffs into adopting welfare benefit plans that supposedly complied with Section 419A(f)(6) of the Internal Revenue Code despite Defendants' knowledge that the plans they promoted did not offer the tax advantages they described but instead were abusive tax shelters.

2.     Internal Revenue Code Section 419A(f)(6) provides that a welfare benefit plan will receive preferred tax treatment if (i) more than one employer contributes to the plan, (ii) no employer normally contributes more than ten percent of the total contributions contributed under the plan by all employers, and (iii) the plan does not maintain experience-rating arrangements with respect to individual employers. Sponsors of 419A welfare benefit plans often use various types of life insurance policies as the central or sole funding vehicle for such plans.

3.     Defendants are engaged in the business of selling life insurance policies, including selling such policies to welfare benefit plans that supposedly comply with Section 419A(f)(6), and promoting the use of welfare benefit plans funded by insurance policies to employers and employees.

4.     Defendants widely promoted and sponsored welfare benefit plans that they called "Benistar 419 Plans," which were funded by life insurance policies sold by Defendants. Defendants received substantial financial benefits from the sale of such policies to Benistar 419 Plan participants in the form of fees, commissions, and premiums.

5.     The Benistar 419 Plans were, in fact, illegal tax shelters that exposed Plaintiffs and others who participated in those Plans to costly IRS audits and substantial tax liabilities, penalties, fees, expenses, and interest.

2

6.     Defendants knew or should have known that the Benistar 419 Plans did not comply with Section 419A(f)(6), that the Internal Revenue Service would deem them abusive tax avoidance transactions, and that participants in Benistar 419 Plans would be exposed to substantial tax liabilities and penalties. Defendants nevertheless encouraged and induced Plaintiffs and others to participate in the Benistar 419 Plan for Defendants' own financial gain.

## PARTIES

1.     Plaintiff Dennis J. Reittinger ("Mr. Reittinger") is an individual citizen of North Carolina and a resident of Guilford County.

2.     Karen M. Reittinger ("Mrs. Reittinger") is an individual citizen of North Carolina and a resident of Guilford County. Mr. and Mrs. Reittinger are husband and wife and have been at all times relevant to this Complaint.

3.     Plaintiff Mid-Town Body Repair, Inc. ("Mid-Town") is a business corporation organized and existing pursuant to the laws of North Carolina, with a principal business location of Greensboro, Guilford County, North Carolina. Mr. Reittinger is the President of Mid-Town.

4.     Upon information and belief, Defendant The Lincoln National Life Insurance Company is an Indiana corporation, was formerly known as and is the successor in interest to a corporation known as Jefferson-Pilot Life Insurance Company, which, upon information and belief, was a business corporation organized and existing pursuant to the laws of North Carolina, with a principal office location of Greensboro, Guilford County, North Carolina.

5.     Upon information and belief, Defendant The Lincoln National Life Insurance Company also is a successor in interest to Jefferson Pilot Financial Insurance Company, which, upon information and belief, was a business corporation organized and existing pursuant to the laws of Nebraska, with a principal office location of Omaha, Nebraska.

6. Upon information and belief, Defendant The Lincoln National Life Insurance Company / Jefferson-Pilot Life Insurance Company was also known as or held itself out as "Jefferson Pilot Financial Insurance Company."

7. Upon information and belief, Defendant Securitas Financial Life Insurance Company is a North Carolina corporation with its principal office located in Raleigh, Wake County, North Carolina, and is a successor in interest to and was formerly known as Jefferson Standard Life Insurance Company, which, upon information and belief was a business corporation organized and existing pursuant to the laws of North Carolina. Upon information and belief, Securitas Financial Life Insurance Company / Jefferson Standard Life Insurance Company is or was also known as or held itself out as "Jefferson Pilot Financial Insurance Company."

8. Defendants Securitas Financial Life Insurance Company and The Lincoln National Life Insurance Company (including the entities to which each is a successor in interest or is or was also known as or formerly known as) are hereinafter referred to collectively as "JP" or "Defendants". Upon information and belief, each such entity is responsible for the actions of the other.

## FACTUAL ALLEGATIONS

**A. Defendants Made Material Misrepresentations About the Benistar 419 Plan.**

9. Beginning in approximately 2002, Mr. Reittinger sought to engage in tax planning efforts on his own behalf and on behalf of Mrs. Reittinger and Mid-Town, an automotive body repair shop that has been doing business in Greensboro, North Carolina since 1976.

10. Upon learning of Mr. Reittinger's interest in tax planning, Defendants JP and an agent of JP, Jim Graves ("Graves") contacted Mr. Reittinger to discuss tax planning and

4

insurance products and services offered or provided by JP, including a product they called "the Benistar 419 Plan," which Defendants represented to be a welfare benefit plan that complied with Section 419A of the Internal Revenue Code.

11. On behalf of JP, Graves met with Mr. Reittinger in Greensboro, North Carolina on several occasions in 2002 to present, market, and sell to Plaintiffs the Benistar 419 Plan product.

12. JP and its agent, Graves, made representations to Plaintiffs regarding the purported tax benefits and financial advantages of so-called "419 plans" generally and the Benistar 419 Plan in particular, including the qualifications of the Plan under the applicable rules and regulations of the United States Internal Revenue Service ("IRS").

13. Defendants represented to Mr. Reittinger that JP had undertaken an extensive review of the Benistar 419 Plan and had determined that the Plan met all IRS requirements for such plans.

14. Defendants further represented to Plaintiffs that the Benistar 419 Plan was a legitimate welfare benefit plan such that contributions to the Plan would be tax deductible and that the individual Plaintiffs would be able to take money out of the Plan at any time tax-free, regardless of their age. In particular, Defendants represented to Plaintiffs that:

    a. Mid-Town, as an employer, could make contributions to a Benistar 419 Plan life insurance benefits policy naming as a participant its executive, Plaintiff Dennis Reittinger;

    b. Contributions made by Mid-Town to a Benistar 419 Plan policy would be deductible as business expenses in determining Mid-Town's federal tax liabilities;

5

    c.       Contributions made by Mid-Town to a Benistar 419 Plan policy would not be considered income to the named participant (Plaintiff Dennis Reittinger) in determining federal tax liabilities of the participant during the year of Mid-Town's contribution or at any other time;

    d.       Mid-Town, as the employer/contributor, could cancel a Benistar 419 Plan policy at any time, in which case the named participant (Plaintiff Dennis Reittinger), would receive the cash value of the policy, minus the payment of a "haircut" fee; and

    e.       Any such amounts received by Plaintiff Dennis Reittinger would not be considered income in determining his individual federal tax liabilities during the tax year of receipt or at any other time.

15.    Further, Defendants represented to Plaintiffs that the Benistar 419 Plan product and related transactions were not required to be disclosed to the IRS as so-called "listed transactions" for purposes of the tax shelter disclosure, registration, and list maintenance requirements or otherwise.

16.    During the course of their communications, Defendants provided Plaintiffs with numerous documents that were designed to buttress Defendants' representations to Plaintiffs about, and to inspire further confidence in Plaintiffs in, the benefits of participation in a Benistar 419 Plan and, in particular, the deductibility of contributions to a Benistar 419 Plan under Section 419 of the Internal Revenue Code. Among the documents provided by Defendants were documents entitled "How Does the Benistar 419 Plan Work?" and "Benistar 419 Plan Advantages"; a copy of the "Benistar 419 Plan & Trust"; and the "Benistar 419 Plan & Trust

6

Summary Plan Description." JP and its agent, Graves, provided these materials to Plaintiffs with knowledge of their contents in order to induce Plaintiffs to participate in the Benistar 419 Plan.

17. All of the foregoing representations were made to Plaintiffs to induce them to participate in the Benistar 419 Plan and to convince them, wrongly and with Defendants' actual or constructive knowledge that it was wrong, that their contributions to the Plan would be allowed as tax deductions by the IRS.

18. Upon information and belief, Defendants marketed, presented, sold, and made representations with respect to the Benistar 419 Plans as set forth in this Complaint against the advice of their own counsel, who recommended against JP's involvement in and backing of such marketing, presenting, selling, and representations.

19. Upon information and belief, Defendants were aware that their own counsel recommended and advised against marketing, presenting, selling, and any other involvement with the Benistar 419 Plans, but Defendants intentionally, wantonly, and recklessly disregarded such recommendations and advice and marketed, presented, sold, and made representations and misrepresentations with respect to the Benistar 419 Plans, including to Plaintiffs as set forth herein.

20. Defendants did not inform Plaintiffs that Defendants' own experts and counsel had recommended against offering, presenting, marketing, or being involved in the offering, presenting, or marketing of the Benistar 419 Plan.

**B.    Defendants Established a Relationship of Trust and Confidence with Plaintiffs.**

21. During the course of their communications with Plaintiffs, Defendants held themselves out as experts in the insurance business, including life insurance and corporate benefits plans and the tax advantages and benefits of such plans.

7

22.     Plaintiffs had confidence in JP because JP was locally known as an insurance company that could be trusted.

23.     In their communications and representations to Plaintiffs, Defendants sought to gain a relationship of trust and confidence with Plaintiffs, based in part on Defendants' claimed expertise and on Defendant JP's self-professed reputation as a "major player" in the financial investment and life insurance industry, operating "in all 50 states," "offering superior insurance products at the most competitive prices," and "providing products tailored to the specialized needs of each and every client."

24.     Mr. Reittinger himself did not have the tax knowledge necessary to understand the details of the Benistar 419 Plan.  Instead, he relied upon the purported expertise and the reputation of Defendants.

25.     Defendants' communications and representations to Plaintiffs were intended to, and did in fact, result in the development of a relationship of trust and special confidence between Plaintiffs on the one hand and Defendants on the other, whereby Plaintiffs placed special trust and confidence in Defendants, and relied upon and believed Defendants' representations with respect to insurance and financial products and the tax consequences thereof, including the Benistar 419 Plan.

26.     All of Defendants' representations as set forth above were and are false, and, upon information and belief, Defendants knew or should have known they were false at the time they were made, or Defendants were recklessly indifferent to the accuracy of such recommendations.

27.     Defendants attempted to make certain "disclaimers" to Plaintiffs about participation in the Benistar 419 Plan in certain documents presented to Plaintiffs for signature in

8

connection with their participation in the Benistar 419 Plan, including a document entitled "Benistar 419 Plan & Trust Disclosure and Acknowledgement Statement," which stated that JP made "no representations to the Employer or to any of its employees or representatives concerning the federal and state tax consequences of participation in the Plan," including no representations concerning the following issues:

1. Whether or not the Employer will be allowed a current income tax deduction for amounts contributed to the Plan;

2. Whether or not an income tax deduction allowed in any taxable year may again be allowed in any subsequent taxable year for any reason;

3. Whether the Employer will recognize any income or gain from participation in the Plan or from the termination of participation in the Plan;

4. Whether any transaction might constitute a reversion of Plan assets to the Employer;

5. What amount is includible in an employee's gross income, or in his wages for Social Security and Medicare tax purposes, as a result of participation in the Plan; and

6. What are the gift, estate, or generation-skipping transfer tax consequences of an Employee's participation in the Plan, designation of any beneficiary under Plan or assignment of any entitlement under the Plan or insurance policy.

28. Defendants attempted to "have it both ways" by endorsing and encouraging Plaintiffs' participation in the Benistar 419 Plan while at the same time attempting to have Plaintiffs deny that the Defendants ever did so by signing "disclosure" and "acknowledgement" documents which were included in the voluminous paperwork Plaintiffs were required to sign in connection with their participation in the Plan but never discussed with or explained to Plaintiffs.

29. Such actions are unconscionable and inequitable when dealing with unsophisticated investors such as Plaintiffs. In any event, the purported disclaimers are merely form documents containing general disclaimers that cannot insulate Defendants from liability for

9

the very specific statements and representations they made with respect to these Plaintiffs, their Plan(s), and their facts and circumstances.

**C.    Based on Defendants' Representations, Plaintiffs Elected to Participate in the Benistar 419 Plan.**

30.    Defendants used their position of trust and confidence to cause Plaintiffs to rely upon Defendants' misrepresentations and omissions to enter into a number of transactions involving the Plaintiffs' purchase and use of large insurance policies on the life of Mr. Reittinger to fund Benistar 419 Plans, which transactions benefitted Defendants as Defendants received fees, commissions, and other income from the sale of such policies to Plaintiffs.

31.    Plaintiffs did in fact rely upon Defendants' misrepresentations and omissions to enter into certain transactions involving Benistar 419 Plan policies, including the following:

a.    On or about March 13, 2002, Plaintiff Mid-Town Body Repair, Inc. adopted a Benistar 419 Plan and purchased a life insurance policy from Defendant JP naming Plaintiff Dennis Reittinger as participant, pursuant to which, on or about April 1, 2002, Plaintiff Mid-Town Body Repair, Inc. made a $100,000 contribution to the Benistar 419 Plan, and deducted such amount as a business expense in the 2002 tax year.

b.    Mid-Town thereafter made additional contributions to the Benistar 419 Plan in the following tax year and deducted those amounts as business expenses as follows:  Mid-Town made a $100,000 contribution on or about January 1, 2003, and a $100,000 contribution on or about October 24, 2003.

c.  On or about February 28, 2006, Mid-Town was assessed a nine percent (9%) fee of $26,167.00 to pay legal fees incurred or to be incurred in connection with an IRS investigation into the Benistar 419 Plan.

d.  Plaintiffs did not disclose these transactions as "listed" to the IRS and did not declare any taxable income to Dennis Reittinger based on any of these transactions.

32.  By entering into the transactions and making the investments described above in reliance on Defendants' misrepresentations and omissions, Plaintiffs forewent alternative investment opportunities, which would have reduced their tax liabilities and provided additional revenue and income to Plaintiffs.

**D.  As a Result of Defendants' Misrepresentations and Omissions, Plaintiffs Have Incurred Substantial Tax Liabilities.**

33.  On or about December 8, 2006, the IRS notified Plaintiffs that their tax returns for tax year 2003 had been selected for examination.

34.  On March 2, 2007, the IRS issued Income Tax Discrepancy Adjustments, disallowing Mid-Town's tax deductions related to the Benistar 419 Plan on the ground that the Benistar 419 Plan is not a welfare benefit plan within the meaning of Section 419 of the Internal Revenue Code and, alternatively, that if the Plan is a welfare benefit plan, it does not qualify for the exception created by Section 419A(f)(6).

35.  During the IRS examination process, Graves, on behalf of JP, met with Dennis Reittinger in preparation for a telephone interview conducted by an IRS examiner. Graves provided Mr. Reittinger with handwritten questions and answers that he anticipated would be asked in the course of the investigation and directed Mr. Reittinger's responses to the IRS inquiries.

11

36. On April 3, 2007, the IRS issued a Notice of Deficiency determining that Mid-Town owed additional tax for the tax year ended December 31, 2003 in the amount of $23,573.00 and accuracy-related penalties in the amount of $4,714.60, plus interest on those amounts.

37. On July 9, 2007, the IRS issued a Notice of Deficiency determining that Dennis and Karen Reittinger received income from Mid-Town in the amount of $200,000 for payments made to the Benistar 419 Plan and therefore owed additional tax for the tax year ended December 31, 2003 in the amount of $71,126.00 and accuracy-related penalties in the amount of $14,225.20, plus interest on those amounts.

38. As a result of Plaintiffs' adoption of and participation in the Benistar 419 Plan policies and associated transactions as set forth above, the IRS assessed back taxes, fines, and penalties against Plaintiffs.

39. The findings of tax liability and assessment of fines and penalties by the IRS were contrary to the representations made by Defendants.

40. The damages suffered by Plaintiffs, and proximately caused by Defendants, total in excess of $100,000 and include but are not limited to the following:

    a.    IRS assessment of $14,225 in penalties against Plaintiffs Karen and Dennis Reittinger for failure to timely and fully pay taxes for the tax year 2003, plus interest;

    b.    IRS assessment of $4,714.60 in penalties against Mid-Town Body Repair, Inc. for "substantial understatement" of taxable income for tax year 2003, plus interest;

12

c.   Assessment of $26,167.00 to pay legal fees incurred or to be incurred in connection with an IRS investigation into the Benistar 419 Plan;

d.   Lost income and tax advantages due to foregone opportunities of alternative investments;

e.   Additional costs to respond to the IRS investigation of their tax returns and to defend against and mitigate the payment of assessments and penalties; and

f.   Future assessments by the North Carolina Department of Revenue with respect to adjustments made by the Internal Revenue Service.

41.   Plaintiffs have cooperated fully with the IRS examination and the assessment of back taxes, interest, fines, and penalties as a result of tax benefits they claimed from the Benistar 419 Plan.

## CLASS ALLEGATIONS

42.   Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, as a class action on behalf of themselves and the class of all persons (the "Class Members" or the "Class") defined below against Defendants:

> All persons who, from 1998 to the present, inclusive, (1) participated in and contributed funds to a "welfare benefit plan" funded, in whole or in part, with life insurance policies issued by Defendants, (2) took tax deductions in the amount of such contributions, and (3) were assessed back-taxes, penalties, and/or interest by the Internal Revenue Service as a result of such tax deductions. Excluded from the Class are: Defendants, Defendants' parents, subsidiaries, and affiliates; anyone receiving referral fees for the plans; and federal governmental entities.

43.   Upon information and belief, the Class consists of dozens if not hundreds of Class Members geographically dispersed throughout the United States such that it would be

13

impracticable to bring them all before the Court via individual actions. The Class Members will be identified from information and records maintained by Defendants or third parties.

44. The claims of all Class Members originate from the same misrepresentations and breaches of fiduciary duty by the Defendants, and Plaintiffs' claims therefore are typical of the claims of the Class Members.

45. Questions of law and fact are common to the proposed Class. Such common questions include:

a. Whether Defendants misrepresented to Plaintiffs and other Class Members the validity, benefits, and tax consequences of participation in the Benistar 419 Plan and associated policies and transactions;

b. Whether Defendants breached their fiduciary and other duties to Plaintiffs and other Class Members in failing reasonably to evaluate, and in misrepresenting or failing to communicate truthfully and accurately, the validity, benefits, and tax consequences of the Benistar 419 Plan and associated policies and transactions;

c. Whether Defendants had actual knowledge that the representations in question were not true;

d. Whether the purported waivers signed by policyholders were valid;

e. Whether Defendants' acts and omissions amount to unfair and deceptive acts or practices in the business of insurance as set forth in N.C. Gen. Stat. § 58-63-15 and unfair and deceptive acts and trade practices as set forth in N.C. Gen. Stat. § 75-1.1 *et seq*; and

f.    Whether Defendants' actions described above proximately caused injury to Plaintiffs and other Class Members or their businesses or property.

46.    Questions of law and fact applicable to the Class predominate over individual questions.

47.    If Class Members' claims were brought individually, each Class Member would be required to prove Defendants' negligence, misrepresentations, breaches of duty, and unfair and deceptive acts and practices upon the same material and substantive facts, upon the same theories, and in pursuit of the same relief. The prosecution of separate actions by individual Class Members therefore would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class.

48.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A refusal to allow this action to proceed as a Class Action under Rule 23 would be contrary to the public policy of judicial economy and economies of attorney and litigant time and resources in avoiding a multiplicity of similar actions.

49.    The claims brought by and relief sought by Plaintiffs are sufficiently aligned with the interests of the Class Members to ensure that the claims of the Class will be prosecuted diligently and with due care by Plaintiffs as representatives of the Class.

50.    The named Plaintiffs are willing and prepared to serve the Court and the proposed Class in a representative capacity with all of the obligations and duties material thereto and will undertake diligently to protect the interests of absent Class Members. Plaintiffs' interests are co-extensive with, and not antagonistic to, the interests of absent Class Members.

51.    The named Plaintiffs as proposed Class Representatives have engaged the services of counsel indicated below, who are experienced in complex litigation and adequately

15

will prosecute this action and assert, protect, and otherwise represent both Plaintiffs as named Class representatives and absent Class Members.

52.     Defendants have acted or refused to act on grounds generally applicable to the Class, making final relief with respect to the Class as a whole appropriate.

53.     For the foregoing reasons, Class certification is appropriate under Rule 23.

## TOLLING

54.     Plaintiffs have not delayed unreasonably in seeking relief against Defendants.

55.     On or about December 8, 2008, Plaintiffs and the Commissioner of Internal Revenue executed a "Stipulation to Be Bound," by which they agreed that the question whether amounts paid by Mid-Town in connection with its participation in the Benistar 419 Plan are deductible would be determined in keeping with the decision of the "highest court resolving each or any of" four specified "Controlling Cases," each of which involved "the tax consequences of participation in" the Benistar 419 Plan.

56.     The United States Court of Appeals for the Second Circuit issued a decision in the first of the "Controlling Cases," *Curcio v. Commissioner of Internal Revenue*, 689 F.3d 217 (2d Cir. 2012), on August 9, 2012. The United States Supreme Court denied a petition for writ of certiorari on June 17, 2013, 2013 U.S. LEXIS 4595; 81 U.S.L.W. 3689, rendering the *Curcio* decision final and thus, according to the Stipulation, determinative of Plaintiffs' liability for the taxes, penalties, and interest assessed by the IRS.

57.     Additionally, Defendants are estopped from relying on any statute of limitations defense in light of their unfair and deceptive conduct.

16

## FIRST CAUSE OF ACTION
## (Negligent Misrepresentation)

58.     The allegations of the foregoing paragraphs are incorporated by reference.

59.     In the course of their business and profession, with respect to transactions in which they had a financial interest, Defendants supplied information regarding the Benistar 419 Plan policies and transactions to Plaintiffs and other Class Members, Defendants' clients for those transactions, with the knowledge that Plaintiffs and other Class Members might be interested in participating in a valid 419 plan.

60.     Defendants had a duty to exercise reasonable care and competence in obtaining and communicating accurate and truthful information regarding the Benistar 419 Plan and related insurance policies to persons, including Plaintiffs and other Class Members, whom Defendants knew would, or intended to, rely on information supplied by them.

61.     Defendants breached this duty by making the following false representations to Plaintiffs and other Class Members:

   a.     That the Benistar 419 Plan is a suitable retirement plan;

   b.     That the Benistar 419 Plan is a welfare benefit plan and not a plan of deferred compensation;

   c.     That the Benistar 419 Plan complied with all federal tax laws and regulations;

   d.     That contributions to the Benistar 419 Plan qualified as business deductions for federal income tax purposes;

   e.     That life insurance policies issued by Defendants were appropriate for purchase by and use in a qualified 419A plan;

17

f.    That monies invested in the Benistar 419 Plan could be withdrawn "tax free" at any time; and

g.    That the Benistar 419 Plan is not a tax shelter and is not required to be declared as a "listed" transaction to the IRS.

62.    The information supplied by the Defendants regarding the validity, benefits, and tax consequences of the Benistar 419 Plan, and Defendants' assessment of such Plan, was false.

63.    Defendants intended Plaintiffs and other Class Members (who might be interested in participating in a valid 419 plan) to rely on their misrepresentations for guidance or benefit in the entering into Benistar 419 Plan transactions.

64.    Defendants had a financial interest in making such representations.

65.    Defendants' misrepresentations caused damage to Plaintiffs and other Class Members, including commissions, fees, and premiums paid to Defendants and "haircut" fees paid by Plaintiffs and other Class Members, which resulted in a direct financial benefit to Defendants.

66.    Defendants failed to exercise reasonable care or competence in obtaining and communicating the false information, or knowingly, wantonly, or recklessly communicated such information, when Defendants know or should have known such information was false.

67.    Plaintiffs and other Class Members actually relied on the false information supplied by the Defendants regarding the Benistar 419 Plan, and Plaintiffs' and other Class Members' reliance was justifiable, as a reasonable person, in the exercise of ordinary care, would have relied on the false information and would not have discovered the information was false.

18

68.     If Plaintiffs and other Class Members had been made aware of the facts concealed by the foregoing misrepresentations and/or omissions, they would not have participated in the Plan or purchased life insurance policies from Defendants.

69.     Plaintiffs' and other Class Members' reliance on Defendants' negligent misrepresentations and omissions proximately caused Plaintiffs and other Class Members to incur damages in an amount greater than $25,000 to be proven at trial, as well as such exemplary damages as may be found appropriate pursuant to N.C. Gen. Stat. § 1D-15.

### SECOND CAUSE OF ACTION
**(Breach of Fiduciary Duty / Constructive Fraud)**

70.     The allegations of the foregoing paragraphs are incorporated by reference.

71.     As a result of the communications and representations of Defendants to Plaintiffs and other Class Members as set forth above, a relationship of trust and confidence developed and existed between Plaintiffs and other Class Members, on the one hand, and Defendants, on the other hand, whereby Plaintiffs and other Class Members placed special confidence in Defendants who, in equity and good conscience, had a duty to act in good faith and with due regard for Plaintiffs' and other Class Members' interests.

72.     This relationship of trust and confidence existed prior to, during, and after the Benistar 419 Plan transactions set forth above.

73.     As a result of the relationship of trust and confidence between Plaintiffs and other Class Members, on one hand, and Defendants, on the other hand, Defendants owed Plaintiffs and other Class Members duties of honesty, loyalty, and care.

74.     Defendants used their position of trust and confidence with Plaintiffs and other Class Members to bring about the Benistar 419 Plan transactions as set forth above to the

detriment of Plaintiffs and other Class Members and to the benefit of Defendants, who earned commissions and other fees and amounts from the transactions.

75.     Defendants further breached their fiduciary duties in failing to disclose that the documents they required Plaintiffs and other Class Members to sign in connection with the Benistar 419 Plan transactions set forth above purportedly "disclaimed" the very representations made by Defendants in order to induce Plaintiffs and other Class Members to participate in the Plan.

76.     Defendants' constructive fraud and breaches of their fiduciary duties to Plaintiffs and other Class Members as described above in misrepresenting the validity, tax consequences, and benefits of the Benistar 419 Plan and associated policies and transactions and in failing to disclose the "disclaimers" they required Plaintiffs and other Class Members to sign proximately caused damages to Plaintiffs and other Class Members in an amount greater than $25,000 to be proven at trial, as well as such exemplary damages as may be found appropriate pursuant to N.C. Gen. Stat. § 1D-15.

### THIRD CAUSE OF ACTION
#### (Negligence)

77.     The allegations of the foregoing paragraphs are incorporated by reference.

78.     Defendants had a general duty to exercise ordinary care to protect themselves and others, including Plaintiffs and other Class Members, from damage.

79.     As set forth above, Defendants breached their duty of care to Plaintiffs and other Class Members by failing to take reasonable actions to evaluate the validity, benefits, and tax consequences of the Benistar 419 Plan and associated policies and transactions and failing to communicate truthfully and accurately regarding the same; by convincing Plaintiffs and other Class Members to enter into the various Benistar 419 Plan transactions described above; by

20

misrepresenting to Plaintiffs and other Class Members that there was no requirement to disclose such transactions to the IRS (as "listed transactions" or otherwise); and by improper representations and actions that led Plaintiffs and other Class Members to enter into the transaction pursuant to which "haircut" fees were paid by Plaintiffs and other Class Members.

80.     Defendants' breach of their duty to Plaintiffs and other Class Members proximately as described above proximately caused damages to Plaintiffs and other Class Members in an amount greater than $25,000 to be proven at trial, as well as such exemplary damages as may be found appropriate pursuant to N.C. Gen. Stat. § 1D-15.

### FOURTH CAUSE OF ACTION
(Negligent Hiring, Training, and Supervision)

81.     The allegations of the foregoing paragraphs are incorporated by reference.

82.     At all times relevant to this Complaint, Graves acted within the scope of his employment and agency with Defendant JP.

83.     Defendants owed a duty of care to Plaintiffs and other Class Members to properly hire, train, and supervise the conduct and actions of Graves, JP's employee and agent, with respect to his handling of Plaintiffs' and other Class Members' participation in the Benistar 419 Plan and his communications and representations about the Plan.

84.     Defendants breached their duty of care by failing to monitor and supervise Graves' communications with Plaintiffs and other Class Members in that they failed to prevent Graves from misrepresenting the purported tax benefits and financial advantages of participation in the Benistar 419 Plan and the qualifications of the Plan under applicable IRS rules and regulations.

85.     Plaintiffs and other Class Members have been damaged as a direct and proximate result of Defendants' negligent failure to hire, train, and supervise and monitor the activities of their employee and agent, Graves, in an amount in excess of $25,000.00 to be proven at trial.

### FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

86.     The allegations of the foregoing paragraphs are incorporated by reference.

87.     Plaintiffs and other Class Members contributed money to the Benistar 419 Plan that was used to pay fees, commissions, and premiums to Defendants. Had Plaintiffs and other Class Members not been enticed and misled to enter into the Plan, such monies, and fees, commissions, and premiums would not have been paid to Defendants.

88.     In paying monies that were used to pay fees, commissions, and premiums to Defendants, Plaintiffs and other Class Members conferred a benefit on them.

89.     Defendants knowingly accepted and retained the benefits conferred on them by Plaintiffs' and other Class Members' participation in the Benistar 419 Plan.

90.     At the time they accepted those benefits, Defendants knew or should have known that the IRS would deem the Benistar 419 Plan invalid and that Plaintiffs and other Class Members might not receive the tax and other benefits of participation in the Plan that they had paid for.

91.     Under these circumstances, it would be inequitable for Defendants to retain the benefits conferred on them.

92.     Defendants have been unjustly enriched, and all fees, commissions, and premiums paid to them should be returned to Plaintiffs and other Class Members.

## SIXTH CAUSE OF ACTION
### (Unfair and Deceptive Acts in Violation of N.C. Gen. Stat. § 58-63-1 *et seq.* and the common law)

93.     The allegations of the foregoing paragraphs are incorporated by reference.

94.     Defendants made, issued, or circulated or caused to be made, issued, or circulated information, materials, and statements that were false, misleading, and misrepresented the terms of the Benistar 419 Plan life insurance policies to be issued to Plaintiffs and other Class Members and the benefits or advantages thereof.     Plaintiffs relied on Defendants' misrepresentations.

95.     The acts and omissions of Defendants as set forth above are unfair and deceptive acts or practices in the business of insurance as set forth in N.C. Gen. Stat. § 58-63-15 and the common law.

96.     Defendants' unfair and deceptive acts took place in the State of North Carolina and were in or affecting commerce within the State of North Carolina.

97.     Defendants' unfair and deceptive acts proximately caused actual injury and damages to Plaintiffs and other Class Members in an amount greater than $25,000 to be proven at trial.

98.     Because of Defendants' unfair and deceptive acts and trade practices, Plaintiffs and other Class Members are further entitled to treble damages and attorneys' fees pursuant to N.C. Gen. Stat. § 58-63-1 *et seq.* and § 75-1.1 *et seq.*

## SEVENTH CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices in Violation of N.C. Gen. Stat. § 75-1.1 *et seq.* and the common law)

99.     The allegations of the foregoing paragraphs are incorporated by reference.

23

100. The conduct of Defendants as set forth above took place in the State of North Carolina and was in or affecting commerce within the State of North Carolina.

101. The conduct of Defendants as set forth above constitutes unfair and deceptive acts and trade practices as set forth in N.C. Gen. Stat. § 75-1.1 *et seq.* and the common law.

102. Defendants' unfair and deceptive acts proximately caused actual injury and damages to Plaintiffs and other Class Members in an amount greater than $25,000 to be proven at trial.

103. Defendants refused to resolve the subject matter of this litigation. Such refusal was unreasonable.

104. Because of Defendants' unfair and deceptive acts and trade practices, Plaintiffs and other Class Members are further entitled to treble damages and attorneys' fees pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other Class Members, respectfully pray that the Court:

1. Determine that this action may be maintained as a class action pursuant to Rule 23 of the North Carolina Rules of Civil Procedure and direct that reasonable notice of this action be given to Class Members;

2. Enter judgment in favor of Plaintiffs and other Class Members and against Defendants, jointly and severally, on all of Plaintiffs' claims herein;

3. Order that Plaintiffs and other Class Members have and recover from Defendants, jointly and severally, compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000) to be proven at trial;

24

4.  Order that Plaintiff and other Class Members have and recover from Defendants, jointly and severally, treble the amount of their actual damages as determined at trial, pursuant to N.C. Gen. Stat. § 75-16;

5.  Order that Plaintiffs and other Class Members have and recover from Defendants, jointly and severally, their costs and expenses in this action, including reasonable attorneys' fees, pursuant to N.C. Gen. Stat. § 75-16 and other applicable laws;

6.  Order that Plaintiffs and other Class Members have and recover from Defendants, jointly and severally, exemplary damages pursuant to N.C. Gen. Stat. § 1D-15 or otherwise, as allowed by law;

7.  Tax the costs of this matter as may otherwise be allowed by law against the Defendants;

8.  Provide a trial by jury as to all issues so triable; and

9.  Grant such other and further relief as the Court deems just and proper.


Respectfully submitted, this the __24__ day of September, 2013.


_____
Robert J. King III
  N.C. State Bar No. 15946
Julia C. Ambrose
  N.C. State Bar No. 37534
*Attorneys for Plaintiffs*

**OF COUNSEL:**

BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
2000 Renaissance Plaza
Post Office Box 26000
Greensboro, North Carolina 27420
Telephone: (336) 373-8850

25